CASE NO. 20-1001 (L)

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

BONNIE PELTIER, as Guardian of A.P., a minor child; ERIKA BOOTH, as Guardian of I.B., a minor child; and KEELY BURKS,

*Plaintiffs-Appellees, Cross-Appellants*

v.

CHARTER DAY SCHOOL, INC.; ROBERT P. SPENCER; CHAD ADAMS; SUZANNE WEST; COLLEEN COMBS; TED BODENSCHATZ; and MELISSA GOTT
in their capacities as members of the Board of Trustees of Charter Day School, Inc.; and THE ROGER BACON ACADEMY, INC.,

*Defendants-Appellants*

and

THE ROGER BACON ACADEMY, INC.,

*Defendant-Cross-Appellee*

On Appeal from the United States District Court for the Eastern District of North Carolina, Southern Division Case No. 7:16-cv-00030-H-KS

## PLAINTIFFS-APPELLEES

## PETITION FOR REHEARING EN BANC

Galen Sherwin
Ria Tabacco Mar
Jennessa Calvo-
   Friedman
Amy Lynn Katz
Alexandra Bornstein
American Civil
Liberties Union Fnd.
125 Broad St., 18th Fl.
New York, NY 10004

Irena Como
Kristi Graunke
ACLU of North
Carolina Legal Fnd.
P.O. Box 28004
Raleigh, NC 27611

Jonathan D. Sasser
Ellis & Winters LLP
P.O. Box 33550
Raleigh, NC 27636

*Counsel for Plaintiffs-Appellees*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................ii

INTRODUCTION & FED. R. APP. P. 35(b) STATEMENT ..................... 1

BACKGROUND ....................................................................... 4

REASONS FOR GRANTING THE PETITION ........................................ 7

I.   The Majority's Decision Conflicts with Supreme Court
     and Fourth Circuit State Action Doctrine ............................ 7

     A.   The Majority Failed to Recognize that CDS Is a
          State Actor as to Its Students Because the State
          Delegated Its Legal Obligation to Provide Free
          Public Education to the School ..................................... 7

     B.   The Majority Failed to Focus on Either the "Specific
          Conduct" at Issue or on the Indisputably Public
          Context in Which it Occurred ..................................... 13

II.  The Applicability of Constitutional Freedoms to Public
     Charter Schools Is a Matter of Exceptional Importance ...... 17

CONCLUSION ....................................................................... 20

CERTIFICATE OF COMPLIANCE ............................................... 23

CERTIFICATE OF SERVICE ...................................................... 24

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Andrews v. Fed. Home Loan Bank of Atlanta,*
  998 F.2d 214 (4th Cir. 1993)................................................................13

*Blum v. Yaretsky,*
  457 U.S. 991 (1982)..........................................................................12

*Brentwood Acad. v. Tenn. Secondary Schs. Athletic Ass'n,*
  531 U.S. 288 (2001)...............................................................2, 13, 14

*Caviness v. Horizon Cmty. Learning Ctr., Inc.,*
  590 F.3d 806 (9th Cir. 2010).....................................................3, 15, 16

*Edmonson v. Leesville Concrete Co.,*
  500 U.S. 614 (1991)....................................................................16, 17

*Fitzgerald v. Barnstable Sch. Comm.,*
  555 U.S. 246 (2009)..........................................................................19

*Goldstein v. Chestnut Ridge Volunteer Fire Co.,*
  218 F.3d 337 (4th Cir. 2000).......................................................passim

*Jackson v. Metropolitan Edison Co.,*
  419 U.S. 345 (1974)..........................................................................12

*Leandro v. State of North Carolina,*
  488 S.E.2d 249 (N.C. 1997)...............................................................15

*Logiodice v. Trustees of Maine Cent. Inst.,*
  296 F.3d 22 (1st Cir. 2002)...............................................................15

*Lugar v. Edmondson Oil Co.,*
  457 U.S. 922 (1982)...........................................................................2

*Mahanoy Area Sch. Dist. v. B.L.,*
  141 S. Ct. 2038 (2021) ......................................................................19

*Manhattan Cmty. Access Corp. v. Halleck*,
   139 S. Ct. 1921 (2019) ............................................................7

*Mentavlos v. Anderson*,
   249 F.3d 301 (4th Cir. 2001) ...........................................3, 13

*Mitchum v. Foster*,
   407 U.S. 225 (1972) ..............................................................20

*O.T. ex rel. Turton v. Frenchtown Elementary Sch. Dist. Bd. of
   Educ.*,
   465 F. Supp. 2d 369 (D.N.J. 2006) ......................................19

*Rendell-Baker v. Kohn*,
   457 U.S. 830 (1982) ...........................................3, 14, 15, 16

*Robert S. v. Stetson School, Inc.*,
   256 F.3d 159 (3d Cir. 2001) ................................................15

*Safford Unif. Sch. Dist. v. Redding*,
   557 U.S. 364 (2009) ..............................................................20

*Silver v. Halifax Cnty. Bd. of Comm'rs*,
   821 S.E.2d 755 (N.C. 2018) ...................................................8

*West v. Atkins*,
   487 U.S. 42 (1988) ...................................................... passim

*Wilcox v. Lyons*,
   970 F.3d 452 (4th Cir. 2020) ...............................................19

## Constitutional and Statutory Provisions

N.C. Const. Art. I, § 15 ....................................................4, 8, 9

N.C. Const. Art. IX, § 2.......................................4, 5, 9, 11, 13

N.C. Const. Art. IX, § 3 ................................................................ 4, 5, 9, 13

Ariz. Rev. Stat. § 15-181 ....................................................................... 15

N.C. Gen. Stat. § 115C-1 ................................................................. 5, 9, 13

N.C. Gen. Stat. § 115C-83.15 .................................................................. 10

N.C. Gen. Stat. § 115C-218 ...................................................................... 9

N.C. Gen. Stat. § 115C-218.6 ............................................................. 16, 20

N.C. Gen. Stat. § 115C-218.15 ...................................................... 5, 9, 12, 16

N.C. Gen. Stat. § 115C-218.20 ................................................................ 10

N.C. Gen. Stat. § 115C-218.25 ................................................................ 10

N.C. Gen. Stat. § 115C-218.45 ....................................................... 9, 10, 13

N.C. Gen. Stat. § 115C-218.65 ................................................................ 10

N.C. Gen. Stat. § 115C-218.90 ................................................................ 10

N.C. Gen. Stat. § 115C-378(a) ................................................................. 8

N.C. Gen. Stat. § 115C-390.2 .................................................................. 16

**Other Authorities**

Helen F. Ladd et al., *The Growing Segmentation of the Charter School Sector in North Carolina* App. Table A.1 (Nat'l Ctr. for the Analysis of Longitudinal Data in Edu. Rsch., Working Paper No. 133, 2015) ......................................................... 20

Nat'l Ctr. For Edu. Statistics, *Digest of Education Statistics, 2020 Tables & Figures*, Table 216.90 .......................................... 4, 18

State Bd. Of Educ., *2020 Annual Charter Schools Report*
(June 15, 2021) ........................................................ 4, 18, 20

## <u>INTRODUCTION & FED. R. APP. P. 35(b) STATEMENT</u>

This case presents the question whether a public charter school, formed to provide the free public education guaranteed all children in North Carolina, must abide by the Constitution while doing so. This is the first time any federal court of appeals has considered this question. While the school policy at issue here—a charter school's requirement that girls wear skirts as a condition of attendance—involves sex discrimination, this Court's answer to this question could have far-reaching implications. The panel's decision calls into question whether thousands of charter school students in North Carolina—and millions across the nation—have any constitutional rights while attending school. Because the panel majority opinion is inconsistent with this Court's and the Supreme Court's precedents and concerns an issue of exceptional importance, this Court should grant rehearing en banc.

The district court held that in adopting student disciplinary rules, including the requirement that girls wear skirts to school, Defendant-Appellant Charter Day School Inc. ("CDS") is subject to the same constitutional constraints as other public-school operators. The court therefore granted summary judgment to Plaintiffs-Appellees, students

attending the school, on their federal equal protection claim. On appeal, a divided panel reversed, holding that CDS is not a "state actor"—and therefore not governed by the Equal Protection Clause. (DE 81, 18-29, hereinafter "Op.") The panel did so even though, "under the plain language of [North Carolina] statutes, charter schools, as a matter of state law, are public institutions." Op. 45 (Keenan, J., concurring in part and dissenting in part) (hereinafter "Keenan Op.").

The panel majority's analysis in reaching the conclusion that CDS is not a state actor conflicts with this Court's and the Supreme Court's precedent. North Carolina's constitutional and statutory scheme governing charter schools, including school discipline policies, militates the conclusion that the dress code challenged here is "fairly attributable to the state." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Brentwood Acad. v. Tenn. Secondary Schs. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). In declining to find state action, the panel majority erroneously dismissed the significance of the state's delegation of its constitutional obligation to CDS. *See West*, 487 U.S. at 49; *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 345 (4th Cir. 2000). As Judge Keenan

emphasized, "The state legislature unambiguously created charter schools as public entities." Keenan Op. 48. Most significantly, it did so "under the state's authority and responsibility to provide its citizens a free public education" to all, *id.* at 43, and thereby delegated its obligation and authority to CDS. The school "would not exist but for North Carolina's creation of the public charter school system and the state's decision to grant CDS a charter." *Id.*

In addition, the panel majority disregarded the mandate to focus on the specific conduct at issue, *see Mentavlos v. Anderson*, 249 F.3d 301, 311 (4th Cir. 2001), and relied on cases concerning personnel decisions (which do not stem from public legal obligations) rather than the education of students (which does). *See* Op. 16-26 (relying on *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) and *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806 (9th Cir. 2010)). Ultimately, the majority decision cannot be reconciled with this Court's prior acknowledgement that "[a] private party may not, on one hand, function in the exclusive province of the state, exercise powers reserved to the state, and benefit from protections reserved to the state, while on the

3

other hand, act without regard to the Constitution." *Goldstein*, 218 F.3d at 345.

Permitting the panel decision to stand risks depriving 126,000 charter school students in North Carolina, and 3.3 million such students nationwide,[1] of constitutional protections—whether school authorities are disciplining them, searching them, compelling religious practices, prohibiting speech, or discriminating against them based on sex, race, or any other protected characteristic. That is hardly a result the state could have envisioned when it granted CDS a charter to operate in North Carolina subject to the condition that it "compl[y] with the Federal and State Constitutions." JA 0214.

## **BACKGROUND**

The North Carolina Constitution obligates the state to provide universal, free, public education to all. N.C. Const. Art. I, § 15; N.C.

---

[1] *See State Bd. Of Educ., 2020 Annual Charter Schools Report* 21 (June 15, 2021), https://ncleg.gov/documentsites/committees/JLEOC/Reports%20Receive d/2021%20Reports%20Received/Annual%20Charter%20Schools%20Rep ort.pdf.; Nat'l Ctr. For Edu. Statistics, *Digest of Education Statistics*, 2020 Tables & Figures, Table 216.90, https://nces.ed.gov/programs/digest/d20/tables/dt20_216.90.asp (showing figures as of 2018-19).

Const. Art. IX, §§ 2(1), 3. The state meets that obligation by providing traditional public schools as well as charter schools, both of which are designated as "public schools" available free of tuition to all eligible North Carolina residents. N.C. Gen. Stat. §§ 115C-1, 115C-218.15(a).

Charter Day School (the "School"), a public charter school in Leland, North Carolina, requires girls to wear skirts, skorts, or dresses as a condition of attending school ("Skirts Requirement"). By Defendants-Appellants' admission, the Skirts Requirement was adopted to promote "traditional" gender norms—specifically, the notion that girls and boys should be treated differently at school—and to emphasize "chivalry." Op. 8; Keenan Op. 49.

Plaintiffs-Appellees, girls at the School's elementary and middle schools, assert that the Skirts Requirement violates the Equal Protection Clause of the United States Constitution, along with other state and federal laws. Following discovery, the district court granted Plaintiffs-Appellees' Motion for Summary Judgment on their equal protection claim against CDS and the members of its Board of Directors. Judge Howard found Defendants-Appellants were state actors in promulgating the Skirts Requirement as a part of the school disciplinary

5

code, and further held that the Skirts Requirement itself failed to satisfy heightened scrutiny, impermissibly limiting girls' opportunities at school. Op.11-13; JA 2740-44.

A partially divided panel of this Court reversed,[2] with the panel majority holding that CDS's status as a private corporation trumped the other state-action factors, insulating the Skirts Requirement from constitutional review. Op. 16-26. At the same time, the majority acknowledged that, should the Skirts Requirement be subject to constitutional review, the justifications offered would not survive heightened scrutiny. Op. 29, 39.

Judge Keenan dissented on the state action issue, finding the question is "not complicated," since "the actions of . . . a *public* school created under North Carolina law and funded almost entirely by governmental sources" constitute state action. Keenan Op. 44, 42. Remarking that "this is not 1821 or 1921. It's 2021," Judge Keenan further would have held the Skirts Requirement failed intermediate

---

[2] The panel unanimously reinstated Plaintiffs-Appellees' claim that the Skirts Requirement violates Title IX, which is not at issue in this petition. Also not presented here are Plaintiffs-Appellees' remaining state-law claims, on which the district court deferred ruling.

scrutiny because it is grounded in "the outmoded and illogical viewpoint that courteous behavior on the part of both sexes cannot be achieved unless girls wear clothing that reinforces sex stereotypes and signals that girls are not as capable and resilient as boys." *Id.* 42.

## <u>REASONS FOR GRANTING THE PETITION</u>

### I.  <u>The Majority's Decision Conflicts with Supreme Court and Fourth Circuit State Action Doctrine.</u>

#### A.  **The Majority Failed to Recognize that CDS Is a State Actor as to Its Students Because the State Delegated Its Legal Obligation to Provide Free Public Education to the School.**

CDS is a state actor, at least as to rules regarding students, because North Carolina delegated to charter schools generally, and to CDS specifically through its charter, its legal obligation to provide free, universal public education. *See* Keenan Op. 44-48. *See West*, 487 U.S. at 56-57 & n.14; *see also Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1929 n.1 (2019). The panel majority overlooked both the state's formal designation of the School as a public school and the delegation of its constitutional obligation to educate students. The decision therefore cannot be squared with *West*, or with cases in this Circuit applying *West*'s principles. *See* 487 U.S. 42; *Goldstein*, 218 F.3d at 342-45.

In *West*, the Supreme Court recognized that a private doctor under contract with the state to provide medical care in state prison was a state actor, reasoning that because he did so in furtherance of the state's obligation under the Eighth Amendment to provide necessary medical care to prisoners, he was "clothed with the authority of state law." *Id.* at 55 (citation omitted). Here, CDS derives its authority over the Plaintiffs-Appellees—public school students subject to compulsory school attendance, *see* N.C. Gen. Stat. § 115C-378(a)—from the state's constitutional obligation to provide free public education, its enactment of the charter school statute pursuant to that authority, and its delegation of that responsibility to CDS through its charter. *See also Goldstein*, 218 F.3d at 345 (sovereign powers delegated to volunteer fire department supported finding state action).

As the North Carolina Supreme Court has recognized, the provision of *free, universal public* education is a core constitutional obligation resting with the state alone. *See Silver v. Halifax Cnty. Bd. of Comm'rs*, 821 S.E.2d 755, 756 (N.C. 2018). The North Carolina Constitution confers a right "to the privilege of education," obligates the state "to guard and maintain that right," and mandates provision of "a

general and uniform system of free public schools . . . wherein equal opportunities shall be provided for all students." N.C. Const. art. I, § 15; N.C. Const. Art. IX, § 2; *see also* N.C. Const. Art. IX, § 3 ("The General Assembly shall provide that every child of appropriate age . . . shall attend the public schools, unless educated by other means.").

Pursuant to this authority, North Carolina created the "general and uniform system of free public schools" available "free of charge to all children of the State, and to every person of the State less than 21 years old, who has not completed a standard high school course of study." N.C. Gen. Stat. § 115C-1. It later authorized the creation of charter schools, formed in part to "[p]rovide parents and students with expanded choices in the types of educational opportunities that are available within the public school system," N.C. Gen. Stat. § 115C-218(a)(5), to be open to all students eligible for public school. *Id.* § 115C-218.45. In authorizing charter schools, the state mandated: "A charter school that is approved by the State shall be a public school," and shall be "accountable to the State [Charter School Advisory] Board for ensuring compliance with applicable laws and the provisions of their charters." *Id.* § 115C-218.15(a).

9

The panel majority glossed over the extensive state laws and regulations reinforcing the public character of North Carolina charter schools and their operators. *See* Op. 20 (characterizing the degree of regulation as "hands-off"). For example, the state would not have to waive sovereign immunity for charter schools and their operators, officers, and board members if the schools were private to begin with. *See* N.C. Gen. Stat. § 115C-218.20(a). *See also, e.g.,* N.C. Gen. Stat. § 115C-218.90(a)(4) (charter school employees are state employees eligible for public benefits); *id.* § 115C-218.25 (subjecting charter school boards and members to open meetings and public records law); *id.* § 115C-218.45(e) (subjecting charter school to "any court-ordered desegregation plan" for the local schools); *id.* § 115C-83.15 (requiring reporting of school achievement, growth, performance scores, and grades; *id.* § 115C-218.65 (school report card).

This constitutional and regulatory regime "unambiguously defines its charter schools as public schools established under the state's authority and responsibility to provide its citizens a free public education." Keenan Op. 43; *see also* JA 0213-14 (provision of charter granted to CDS specifying Charter schools are public schools authorized

10

"[p]ursuant to Article IX, Section 2, of the North Carolina Constitution," and requiring CDS to "compl[y] with the Federal and State Constitutions"). Accordingly, here, as in *West*, CDS "clearly 'exercised power possessed by virtue of state law and made possible only because the [school] is clothed with the authority of state law.'" Keenan Op. 46 (quoting *West*, 487 U.S. at 49).

The panel majority's efforts to distinguish *West* fail. It reasoned that because students in North Carolina have a choice to attend a charter school or a non-charter school, CDS is not a state actor because North Carolina does not *exclusively* meet its obligation to provide free public education through charter schools. *See* Op. 16-18. The state need not delegate *all* of its constitutional obligation to a single type of entity in order for it to be a state actor—in fact, the defendant in *West* worked alongside another physician who was a full-time state employee. 487 U.S. at 44. Similarly, it does not matter that the creation of charter schools was not "necessary" to fulfill the state's obligation to provide free, universal public education. Op. 26. It was not "necessary" for the state to hire a private doctor in *West*. Here, as in *West*, it is sufficient that North Carolina has delegated part of its legal obligation to the

11

charter schools. *See* 487 U.S. at 56. The existence of other public schools does not discharge the state of that obligation, nor does it negate that this charter school is also a public school operating "*within the public school system.*" N.C. Gen. Stat. § 115C-218.15(a) (emphasis added). Ultimately, the state "cannot escape the consequences of discriminatory treatment of any portion of the state's student body by outsourcing the state's educational responsibilities to state-created and state-funded entities." Keenan Op. 46.

Nor does the co-existence of alternatives such as private schools or homeschooling render non-public the state's own charter schools, as the panel majority suggested. Op. 22-23. This misconstrues the "public function" test, on which *West* is again instructive. *See* 487 U.S. at 47. Provision of medical care as a general matter is not a function "traditionally the exclusive prerogative of the State," *see Blum v. Yaretsky*, 457 U.S. 991, 993 (1982) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974)), yet the Eighth Amendment obligates the state to provide medical treatment to prisoners in its charge. *See West*, 487 U.S. at 55-56 & n.15. Similarly, provision of education in *all* forms is not reserved exclusively to the state, yet North

Carolina's Constitution obligates the state to provide free education in public schools to all eligible children—"unless educated by other means." N.C. Const. Art. IX §§ 2(1), 3. Private schools and homeschooling may satisfy the mandate that North Carolina *residents* educate their children, but they do not implement the *state's* obligation to make free public education available to all. It is that obligation, "compelled as a matter of constitutional decree," *Andrews v. Fed. Home Loan Bank of Atlanta*, 998 F.2d 214, 218 (4th Cir. 1993), that the state has expressly delegated to charter and non-charter public schools alike. *See* N.C. Gen. Stat. §§ 115C-1, 115C-218.45.

### B. The Majority Failed to Focus on Either the "Specific Conduct" at Issue or on the Indisputably Public Context in Which it Occurred.

This Court's state action analysis is a functional and fact-specific analysis requiring the court to focus, as a threshold question, on "the specific conduct of which the plaintiff complains." *Mentavlos,* 249 F.3d at 311 (citation omitted). *Accord Brentwood Acad.,* 531 U.S. at 298. The panel majority "jump[ed] off the rails" at the outset, Keenan Op. 43, by failing to appreciate the importance to the analysis of the function in

13

question—the education of public-school students, and specifically, the enforcement of a school policy governing student conduct.

The panel majority erred in suggesting that *Rendell-Baker* and other cases have already decided the question. Op. 16-18. Far from it. As Judge Keenan explained, although *Rendell-Baker* also concerned a school, "the similarity between the two cases ends there." Keenan Op. 47. The school in *Rendell-Baker*, unlike the School here, was "indisputably" a private school, with no state law designating it as "public." *Id*; 457 U.S. at 831-32. Rather than providing free public education to all eligible children, as CDS is legally obligated to do, the school in *Rendell-Baker* served a subpopulation of students who "could not be served by traditional public schools." *Id.* at 842. *See also Brentwood Acad.*, 531 U.S. at 302 (distinguishing *Rendell-Baker* and finding state action under the criterion of entwinement). And the conduct challenged in *Rendell-Baker* involved the school's employment decisions—a matter "clearly . . . outside the purview" of the state's regulation of students, Keenan Op. 47—rather than its provision of education to students, long recognized as a fundamental state obligation

14

under the North Carolina Constitution. *See Leandro v. State of North Carolina*, 488 S.E.2d 249, 255 (N.C. 1997).

Similarly, *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, on which the panel majority repeatedly relied, involved a charter school, but like *Rendell-Baker,* concerned the school's conduct as an employer rather than its education of Arizona students, as the Ninth Circuit was careful to note.[3] *See* 590 F.3d at 814 (noting "a state's statutory characterization of a private entity as a public actor for some purposes is not necessarily dispositive with respect to all of that entity's conduct" and finding the state's public designation "does not itself avail [the plaintiff] *in the employment context*" (emphasis added)). Moreover, the Arizona legislature, unlike North Carolina's, chose to expressly exclude charter schools from its state constitutional provision establishing Arizona public schools. *See* Ariz. Rev. Stat. § 15-181.

---

[3] Other cases the majority cites are similarly distinguishable. *See Logiodice v. Trustees of Maine Cent. Inst.*, 296 F.3d 22, 27 (1st Cir. 2002) (private school operating under contract with the state, in keeping with Maine's history of contracting out general education to private schools, was not state actor); *Robert S. v. Stetson School, Inc.*, 256 F.3d 159, 166 (3d Cir. 2001) (same as to private school specializing in treatment of youth adjudicated as sex offenders).

15

Here, unlike in either *Rendell-Baker* or *Caviness*, the specific conduct at issue—a school disciplinary policy—was part of the express delegation of authority from the state to charter schools. The state expressly compels all schools, including charters, to set discipline policies, while specifying such policies must "be consistent with the . . . constitutions, statutes, and regulations of the United States." N.C. Gen. Stat. §§ 115C-390.2, 115C-218.6. At the same time, the state delegates to charter school boards the authority to "decide matters related to the operation of the school, including budgeting, curriculum, and operating procedures." N.C. Gen. Stat. § 115C-218.15(d). It thus permits charter schools to establish a code of conduct consistent with their pedagogical approach, which CDS has done in promulgating the Skirts Requirement. *See* Keenan Op. 48 (noting that by Defendants-Appellants' own admission, the Skirts Requirement is "central to [its] *educational* philosophy, pedagogical priorities, and mission of providing a 'traditional school with a traditional curriculum, traditional manners[,] and traditional respect'") (emphasis in original)).

The majority's emphasis that the state did not directly "approve or supervise" the Skirts Requirement specifically, Op. 24, misses the point

of *delegation*, which entails granting discretion to private entities to carry out a state-mandated function. *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 626 (1991). Indeed, under the panel's reasoning, the government in *West* would have had to "approve or supervise" the precise forms of medical treatment provided to prisoners for state action to lie. Instead, the Court held private doctors "are not removed from the purview of § 1983 simply because they are professionals acting in accordance with professional discretion and judgment." *West*, 487 U.S. at 52; *see also Goldstein*, 218 F.3d at 345 (noting discretionary powers delegated to volunteer fire department). The same is true here.

## II. <u>The Applicability of Constitutional Freedoms to Public Charter Schools Is a Matter of Exceptional Importance.</u>

The conclusion that students at the School may be subjected to the Skirts Requirement even though it likely violates equal protection could have far-reaching implications, threatening to deprive millions of students in charter schools of constitutional rights.

The question of whether charter schools are bound by the Constitution in carrying out a state's legal obligation to provide free public education is a question of first impression in the federal courts of appeals. Numerous lower courts have found charter schools are state

17

actors with respect to the education of students. *See* Reply Br. of Pls'-Appellees, DE 52 (Oct. 2, 2021), at 29 (citing cases). The panel majority's contrary conclusion could deprive charter school students throughout the Fourth Circuit of any constitutional protection from school authorities.

Moreover, if followed outside the circuit, it could deprive millions of students nationwide of critical constitutional protections, at a time when increasing numbers are educated in public charter schools. According to the North Carolina Board of Education, there are 200 charter schools in North Carolina alone, with over 126,000 children in attendance. *See* State Bd. Of Educ., *2020 Annual Charter Schools Report* 21 (June 15, 2021), https://ncleg.gov/documentsites/committees/JLEOC/Reports%20Received/2021%20Reports%20Received/Annual%20Charter%20Schools%20Report.pdf (data as of Oct. 1, 2020). If the rule were adopted more broadly, it could affect the nearly 7,500 charter schools nationwide, serving nearly 3.3 million students. *See* Nat'l Ctr. For Edu. Statistics, *Digest of Education Statistics, 2020 Tables & Figures*, Table 216.90, https://nces.ed.gov/programs/digest/d20/tables/dt20_216.90.asp. While

some parents can afford to send their children to private school or to move to a different public school, many cannot. Those families should not have to choose, as Plaintiffs-Appellees did here, between their constitutional rights and the public school they believe offers the best option for their children. *See* JA 0321-22, 0330.

Finally, the panel majority's assurance that its ruling would not give charter schools license to discriminate because of civil rights protections and other remedies, *see* Op. 28-29, rings hollow. Civil rights laws, however robust, are not coterminous with constitutional protections. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 256 (2009); *Wilcox v. Lyons*, 970 F.3d 452, 464 (4th Cir. 2020); *see also* Op. 39 (noting different standard applies under Title IX than under equal protection). The Constitution, for example, protects students' speech, free exercise, and freedom from unreasonable searches, none of which are reached by civil rights laws. *See, e.g.*, *Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038, 2046 (2021) (affirming First Amendment protection of student speech); *O.T. ex rel. Turton v. Frenchtown Elementary Sch. Dist. Bd. of Educ.*, 465 F. Supp. 2d 369 (D.N.J. 2006) (recognizing constitutional rights of second grader to perform religious

song in school talent show); *Safford Unif. Sch. Dist. v. Redding*, 557 U.S. 364 (2009) (strip search of middle-school student suspected of having ibuprofen violated Fourth Amendment). If permitted to stand, the panel majority's decision risks leaving charter school students within the Fourth Circuit and beyond without adequate recourse for such constitutional violations—the very recourse Section 1983 was intended to provide.[4] *See Mitchum v. Foster*, 407 U.S. 225, 239 (1972).

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant rehearing en banc.

---

[4] Nor should students be left to rely on state enforcement of the charter's terms. Charters typically come up for renewal only once every ten years. N.C. Gen. Stat. § 115C-218.6. Since 1998, North Carolina has revoked only seventeen of the more than 260 charters it has granted. *See* Helen F. Ladd et al., *The Growing Segmentation of the Charter School Sector in North Carolina* App. Table A.1 (Nat'l Ctr. for the Analysis of Longitudinal Data in Edu. Rsch., Working Paper No. 133, 2015), https://caldercenter.org/sites/default/files/WP%20133_0.pdf; State Bd. Of Educ., *2020 Annual Charter Schools Report* 21 (June 15, 2021), https://ncleg.gov/documentsites/committees/JLEOC/Reports%20Receive d/2021%20Reports%20Received/Annual%20Charter%20Schools%20Rep ort.pdf.

Respectfully submitted this 23rd day of August, 2021.

                  AMERICAN CIVIL LIBERTIES UNION
                  FOUNDATION

                  */s/ Galen Sherwin*
                  Galen Sherwin
                  Ria Tabacco Mar
                  Jennesa Calvo-Friedman
                  Amy Lynn Katz
                  Alexandra Bornstein
                  125 Broad Street, 18th Fl.
                  New York, NY 10004
                  Telephone: (212) 549-2615
                  gsherwin@aclu.org
                  rmar@aclu.org
                  jcalvo-friedman@aclu.org
                  wrp_ak@aclu.org
                  legal_ab@aclu.org

AMERICAN CIVIL LIBERTIES UNION
OF NORTH CAROLINA LEGAL
FOUNDATION

/s/ *Irena Como*

Irena Como
Kristi Graunke
P.O. Box 28004
Raleigh, NC 27611
Telephone: (919) 834-3466
icomo@acluofnc.org
kgraunke@acluofnc.org


ELLIS & WINTERS LLP

/s/ *Jonathan D. Sasser*

Jonathan D. Sasser
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
jon.sasser@elliswinters.com

*Counsel for Plaintiffs-Appellees*

22

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments), this brief contains 3,877 words, and has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook font.

Dated: August 23, 2021

/s/ Galen Sherwin
Counsel for Plaintiffs-Appellees

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 23, 2021, I electronically filed the foregoing Petition for Rehearing en Banc of Plaintiffs-Appellees with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: August 23, 2021

/s/ *Galen Sherwin*
*Counsel for Plaintiffs-Appellees*